RULEY, JUDGE:
In 1975, Walter Toppings filed this claim in the sum of $50,000.00 for damages to land allegedly sustained as a result of diversion of a natural drain course by the respondent in *262 1973. At the trial, it appeared that Mr. Toppings acquired the subject property in 1971 but conveyed it to his daughter, Ruth Ann Toppings, in 1974. Accordingly, Ruth Ann Toppings should be substituted as the claimant.
The subject property, located near Chapmanville in Logan County, West Virginia, is approximately eighty-seven feet wide and one hundred thirty feet deep lying between the Guyandotte River on the west and a railroad track and W.Va. Route 10 on its east. It is adjoined on one side by a tract owned by Narlis Watts. A dwelling house occupied by Mr. Toppings is located upon the Toppings property. In the vicinity of the common line between the two properties, there is a ravine or gully estimated to be from thirty to forty-five feet deep at a point opposite the Toppings home. That gully which is of varying width provides a natural drain course and empties into the river. After Mr. Toppings acquired the property, he placed eighteen automobile bodies in the gully for the purpose of inhibiting erosion, and, in 1973, at his request and apparently as an accommodation to him, the respondent covered those vehicles with somewhere between ten and twenty truck loads of dirt and rock. In order to do that, the respondent’s trucks had to travel over the Watts property inasmuch as it was impossible to reach the vehicles from the Toppings property. While the vehicles did not totally impede the flow of surface water through the. area they occupied, the fill which was made upon and over them, did, and, as a result, the main channel of the gully was moved closer to the side upon which the Toppings’ dwelling house was located. It appears that this could have caused acceleration of erosion on that side of the gully near the house. In fact, in April, 1977, the slide or erosion extended to a point only three feet from the house. However, some doubt was injected into the matter of causation by the following answer to the following question during the cross-examination of Patrick Luke, a district conservationist employed by the USDA Soil Conservation Service (the only witness who testified on that issue):
“Q. If this area had been left as a natural drain without any human intervention at all, would this area be eroding?
*263 A. Yes. I can’t say that it would be eroding at a lesser rate or at a greater rate. That’s hard to say.”
Leaving that doubt aside and assuming that the Court should conclude that the respondent caused acceleration of erosion near the claimant’s home, the Court then would face the dilemma of trying to determine what part of the erosion was caused by the rsepondent without any evidence at all on the matter. That would require the Court to engage in pure speculation and, of course, it cannot do that.
The evidence, or lack of it, on the subject of damages is comparable to that respecting causation. The Court is sympathetic to the claimant’s plight but it cannot substitute its imagination, individual or collective, as to matters for which the law wisely requires evidence. Sheppard v. Department of Highways, 9 Ct. Cl. 142 (1972). Accordingly, this claim must be denied.
Claim disallowed.